William L. MILLS, Plaintiff-Appellant,

v.

POLAR MOLECULAR CORPORATION, Otis L. Nelson, Mark L. Nelson, A. Richard Nelson, James E. Larson, Eugene Zwoyer, Kenneth A. Roe and Thomas Ryan, Defendants-Appellees.

Chester J. WALSH, Ronald L. Krumm, T.V. Miles and Joseph Mello, Plaintiffs-Appellants,

v.

POLAR MOLECULAR CORPORATION, Otis L. Nelson, Mark L. Nelson, A. Richard Nelson, James E. Larson and Eugene Zwoyer, Defendants-Appellees.

Nos. 32, 34, Dockets 92-9215, 92-9231.

United States Court of Appeals, Second Circuit.

Argued Sept. 27, 1993.

Decided Dec. 17, 1993.

Richard de Y. Manning, New York City, for plaintiffs-appellants.

Dennis W. Grogan, Johnston & McShane, P.C., New York City, for defendants-appellees.

Before: CARDAMONE, McLAUGHLIN, and LAY,* Circuit Judges.

McLAUGHLIN, Circuit Judge:

Plaintiffs William L. Mills, Chester J. Walsh, T.V. Miles and Joseph Mello appeal from a judgment of the United States District Court for the Southern District of New York (Robert W. Sweet, *Judge*), dismissing their claims of securities fraud, brought under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78*j* (b), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1972), and their claims of mail and wire fraud, brought under 18 U.S.C. § 1346 and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* Mills separately appeals from a judgment dismissing his claims for breaches of contract and fiduciary duty.

We affirm the district court's judgment.

## BACKGROUND

Polar Molecular Corporation ("Polar") is a Utah corporation that manufactures and sells petrochemical compounds. The defendants-appellees are Polar officers and directors (the "Directors"). The plaintiffs are former managers and sales representatives of Polar. In 1989 and 1990, Polar entered various contracts with the individual plaintiffs, and the present dispute arises out of Polar's alleged failure to perform obligations under these contracts.

The complaint alleged the following facts:

### A. *Walsh and Miles*

· In April 1989, Polar hired Chester Walsh and T.V. Miles to be managers. Both employment contracts provided for $70,000 in salary and 25,000 shares of unregistered Polar stock. Because shares must be registered with the Securities and Exchange Commission ("SEC") before they can be sold on

the open market, *see* Securities Exchange Act of 1934, 15 U.S.C. § 78*l*, the contracts stated that Polar would register the shares with the SEC "at the earliest opportunity in the year 1989."

Polar gave the 25,000 shares each to Walsh and Miles as promised, but did not register them. In October 1989, Walsh asked Mark Nelson, president of Polar, why the shares had not been registered. Nelson said the shares were "in registration." Between October and January, other Polar personnel also told Walsh and Miles that the shares would be registered. Despite these assurances, Polar never registered any of the shares.

### . B. *Mello*

In May 1989, Polar hired Joseph Mello to sell its products on commission. As part of the deal, Polar granted Mello an option to purchase 100,000 shares of Polar's stock at $1.75 per share. Polar never registered any stock to sell Mello, and Mello never exercised his option to purchase.

### C. ·*Mills*

William Mills was another salesman for Polar. In January 1990, Mills sued Polar for the breach of a sales representative agreement. On March 20, Mills and Nelson discussed settlement over the telephone. Nelson told Mills that Mills would have to accept unregistered stock as payment because Polar was short of cash. Nelson assured Mills that the stock would be registered immediately after it was. issued. On March 27, Nelson again told Mills over the phone that Polar would register the shares. A week later, Nelson and Mills met in Michigan. There, they agreed that Polar would execute a new sales representative agreement for ·Mills. Nelson promised that Polar would perform its part of the new agreement in all respects.

Mills and Polar finally signed a contract settling their dispute on April 13, 1990 (the "Settlement"). Under the Settlement, Mills agreed to dismiss his claims with prejudice in

---

* The Honorable Donald P. Lay, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

exchange for 30,000 shares of unregistered Polar stock and an option to purchase an additional 200,000 shares. The Settlement also provided that Polar would register the 30,000 shares in the "then current" registration statement on file with the SEC.

Additionally, as the parties discussed, the Settlement stated that Polar would execute a new sales representative agreement, granting Mills the right to solicit orders for Polar products in South America. The agreement stated that Polar was not obligated to accept any of Mills' orders, but that it would not withhold consent unreasonably.

Pursuant to the Settlement, Polar delivered to Mills 30,000 unregistered shares on May 1, 1990. Afterward, Nelson told Mills on several occasions that registration was imminent. At the end of August 1990, however, Polar filed a new registration statement that did not list Mills' shares. The statement, however, did register shares belonging to Nelson and other managers at Polar.

Also in August, Mills procured a large order of Polar products from a Paraguayan buyer. Although Polar initially indicated its approval to both Mills and the Paraguayan buyer, it ultimately rejected the order on the advice of counsel.

### D. *The Proceedings Below*

In early 1991, the plaintiffs brought this action in the United States District Court for the Southern District of New York against Polar and the Directors.[1] The complaint (which the plaintiffs amended several times) alleged that Polar and the Directors promised to register the plaintiffs' shares but never did so. The complaint further alleged that the aggregation of broken promises constituted a pattern of mail and wire fraud in violation of RICO. To bolster the fraud claims, and in an attempt to plead predicate acts under RICO, the complaint alleged that Polar and the Directors had breached promises to register shares to several other persons (in addition to the plaintiffs herein) from 1989 to 1990. Notably, the complaint did not allege that any Directors personally made fraudulent statements in these other instances.

Mills added an allegation that the Directors breached their fiduciary duty by not accepting the Paraguayan order. Mills also alleged claims for breach of contract, arising out of Polar's failure to perform both the sales representative agreement and the Settlement.

Polar and the Directors moved to dismiss the fraud claims for failure to satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, and all the other claims for failure to state a claim under Rule 12(b)(6).

The district court granted the motion and dismissed the entire complaint. It found that the plaintiffs had failed to plead fraud with particularity under Rule 9(b), and that they had not adequately alleged facts to raise a strong inference of scienter, or, fraudulent intent. The court dismissed the RICO claims under Rule 12(b)(6) for failure to allege predicate acts. It dismissed Mills' fiduciary breach claim because he failed to make a demand on the Directors before filing suit. Finally, the court dismissed Mills' contract claims, saying that, for reasons never fully articulated, they should be adjudicated in a Michigan state court.

The plaintiffs now appeal.

## DISCUSSION

 When we review the grant of a motion to dismiss under Rule 9(b) or Rule 12(b)(6), we accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader. *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052 (2d Cir. November 19, 1993). Dismissal under either rule is proper where the plaintiff cannot recover on the facts he has alleged. *See Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984).

---

1. Polar was a defendant below; however, it went into bankruptcy after the appeal was filed, and is no longer an appellee.

## I. *The Rule 10b–5 Claims*

The district court dismissed the Rule 10b–5 securities fraud claims on the grounds that the plaintiffs: (1) had not pled fraud with particularity under Rule 9(b), and (2) had not alleged facts that gave rise to a strong inference of fraudulent intent.

■ Rule 10b–5 proscribes persons from making untrue or misleading statements of material fact in connection with a securities transaction. Employment contracts promising shares as compensation are generally considered securities transactions within Rule 10b–5. *See Dubin v. E.F. Hutton Group Inc.*, 695 F.Supp. 138, 146–47 (S.D.N.Y.1988). A person who promises to perform a specific act in the future, while secretly intending not to perform, violates Rule 10b–5, provided that the promise is given as consideration for the transfer of securities. *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir.1986).

■ A Rule 10b–5 plaintiff must comply with Rule 9(b), which requires that fraud be pled with particularity. Specifically, the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989).

### A. *Walsh, Miles and Mello*

■ The fraud allegations of Walsh, Miles and Mello fail because, even though these plaintiffs have served an original and two amended complaints, they still have not linked the alleged fraudulent statements to particular Directors. Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to "defendants". *Luce*, 802 F.2d at 54. *See DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1249 (2d Cir.1987) (allegations of fraud were insufficient where the complaint did not link any of the defendants to the alleged fraudulent statement). Nor did Walsh, Miles and Mello satisfy Rule 9(b) by alleging simply that "Polar" promised to register the shares. The mere fact that the Directors were controlling persons at Polar does not link them to the statements; the plaintiffs also had to allege that the Directors *personally* knew of, or participated in, the fraud. *See IIT v. Cornfeld*, 619 F.2d 909, 922 (2d Cir.1980); *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1289 (2d Cir.1973).

■ While T.V. Miles does allege that Nelson told him in October 1990 that the shares were "in registration," this statement was made *after* the contracts were signed, and, obviously, could not have induced Miles to sign the contract. A statement cannot be fraudulent if it did not affect an investment decision of the plaintiff. *See Burke v. Jacoby*, 981 F.2d 1372, 1378 (2d Cir.1992) (a 10b–5 plaintiff must demonstrate that he relied on the defendant's false statements when he entered the transaction), *cert. denied*, —— U.S. ——, 113 S.Ct. 2338, 124 L.Ed.2d 249 (1993); *Weiss v. Wittcoff*, 966 F.2d 109, 111 (2d Cir.1992) (the plaintiff must show that the defendant's misrepresentations caused the plaintiff to invest). *See also Schlanger v. Four–Phase Sys. Inc.*, 555 F.Supp. 535, 538 (S.D.N.Y.1982) ("Causation is an essential element of all tort cases, and claims under 10b–5 should be no exception."). Because Miles did not allege that Nelson's statement influenced an investment decision, he has not adequately pled fraud.

### B. *Mills*

In contrast, William Mills alleged several conversations with Nelson that took place before he signed the Settlement. For each conversation, Mills identified a date and place, as well as a specific promise that the shares would be registered immediately after they were issued. Mills also alleged that Nelson's promises induced him to sign the Settlement. Thus, Mills, unlike the prior three plaintiffs, satisfied Rule 9(b). Nevertheless, we affirm dismissal of Mills' claims under Rule 12(b)(6) because we find that he failed to state a claim under Rule 10b–5.

■ A Rule 10b–5 plaintiff must "allege material misstatements or omissions indicating an intent to deceive or defraud in connection with the purchase or sale of a security." *Luce*, 802 F.2d at 55 (citing *Ernst*

& *Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)). The failure to carry out a promise made in connection with a securities transaction is normally a breach of contract. It does not constitute fraud unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform. *See id.* at 55–56. Accordingly, although Rule 9(b) allows a pleader to aver intent generally, a 10b–5 complaint nevertheless must allege facts that raise a strong inference of fraudulent intent. *See Ouaknine v. MacFarlane*, 897 F.2d 75, 81 (2d Cir.1990); *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

*Ouaknine v. MacFarlane*, upon which Mills relies, is not to the contrary. In *Ouaknine*, the defendants' offering memorandum stated that the underlying investment (an apartment renovation project) would cost $2,137,000 to complete. 897 F.2d at 78. Two years later, with the project unfinished, the defendants already had spent more than three times that amount. The plaintiff Ouaknine, who had invested in the project, sued under Rule 10b–5, alleging that the defendants knowingly lied in the offering about what the project would cost. To plead intent, Ouaknine alleged that the defendants' cost projection had failed to include more than $2,000,000 in necessary expenses. *Id.* at 81. We held that Ouaknine adequately alleged facts to imply the defendants intended to deceive when they issued the offering. *Id.*

Here, in contrast, Mills alleged no fact probative of Nelson's intent at the time he made the promises to Mills. Mills alleged that Polar registered shares in *August* 1990 for Nelson and other Polar managers, but not for Mills. This allegation does not bear on Nelson's intent in *April* 1990, when the Settlement was executed.

 We decline Mills' invitation to infer fraudulent intent from the fact that Polar made a number of contracts to register shares and never performed any of them. A contract may be breached for legitimate business reasons. *See generally* E. Allan Farnsworth, *Contracts* § 12.8 at 874–75 (2d ed.

1990). Contractual breach, in and of itself, does not bespeak fraud, and generally does not give rise to tort damages.

Accordingly, we affirm dismissal of the Rule 10b–5 claims for failure to state a claim.

## II. *The RICO Claims*

The district court dismissed the RICO mail and wire fraud claims because the plaintiffs did not sufficiently plead two predicate acts of fraud. We agree.

 To state a mail and wire fraud claim under RICO, a plaintiff must allege that the defendant made two predicate communications, via interstate commerce, that constitute a pattern of racketeering activity. *Sedima, S.P.L.R. v. Imrex Co.*, 473 U.S. 479, 495–96, 105 S.Ct. 3275, 3284–85, 87 L.Ed.2d 346 (1985). Like allegations of securities fraud, allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent. *See Official Publications, Inc. v. Kable News Co., Inc.*, 692 F.Supp. 239, 245 (S.D.N.Y.1988), *aff'd in part, rev'd in part on other grounds*, 884 F.2d 664 (2d Cir.1989). Our conclusion that Walsh, Miles, and Mello failed to satisfy Rule 9(b) demands as a corollary that these allegations cannot serve as predicate acts. The plaintiffs' allegations about Polar's broken promises to third parties were equally vague, and cannot serve as predicate acts either.

 Mills' allegations of fraud also do not suffice. Like Rule 10b–5, mail and wire fraud requires a showing of fraudulent intent. *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d at 49. A complaint alleging mail and wire fraud must plead facts that give rise to a strong inference that the defendant possessed fraudulent intent. *Id.* at 50. As Mills failed to allege facts that support an inference of intent for his 10b–5 claim, similarly he has not adequately pled a predicate act of mail and wire fraud.

Having failed to plead any predicate act of mail and wire fraud, the plaintiffs have not stated a RICO action against the Directors. *See Moss v. Morgan Stanley, Inc.*, 719 F.2d

5, 18 & n. 14 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *Sommerville v. Major Exploration, Inc.*, 576 F.Supp. 902, 913–14 (S.D.N.Y.1983). Thus, the district court properly dismissed these claims.

### III. *Mills' Remaining Claims*

The district court dismissed Mills' claims for breach of contract, stating that they should have been brought in Michigan state court. It dismissed Mills' breach of fiduciary duty claim because the claim was shareholder derivative in nature, and Mills failed to demand cure from Polar's board of directors before filing suit. We find that dismissal was proper on these claims.

### A. *The Contract Claims*

As a contract claim against the Directors, Mills alleged that Polar breached the Settlement by not registering his 30,000 shares, and that Polar breached the sales contract by not accepting the Paraguayan order. While Mills may have stated a claim against Polar for breach, we affirm the dismissal as against the Directors because Mills stated no actionable breach claim against them.

■■■■ A director is not personally liable for his corporation's contractual breaches unless he assumed personal liability, acted in bad faith or committed a tort in connection with the performance of the contract. *See Murtha v. Yonkers Child Care Ass'n, Inc.*, 45 N.Y.2d 913, 915, 411 N.Y.S.2d 219, 220, 383 N.E.2d 865 (1978). That the director, while acting in his official capacity, took actions that resulted in the breach, does not render him personally liable. *Id.* (quoting *In re Brookside Mills*, 276 App.Div. 357, 367, 94 N.Y.S.2d 509, 518 (1950)).

■■■■ Mills does not suggest that Nelson assumed personal liability. However, he argues that Nelson committed a tort by "committing himself ... to good faith performance" of the contracts and then breaching. Every party to a contract commits himself to good faith performance. That does not transmute breach of contract into a tort.

### B. *Fiduciary Breach Claims*

Finally, Mills asserts that the district court erred in dismissing his claim that, by not accepting the Paraguayan sales order, the Directors breached their fiduciary duty to shareholders.

Mills argues that the district court should have applied the law of Utah, where Polar is incorporated, and contends that Utah does not require a shareholder suing for fiduciary breach to seek cure from the directors before suing them.

■■■■ We disagree with Mills' interpretation of Utah law. Mills' fiduciary breach claim, in essence, is that the Directors mismanaged Polar by failing to accept the Paraguayan sales order. In Utah, suits for directorial mismanagement and suits to enforce the corporation's rights with respect to a third-party contract are deemed derivative. *Richardson v. Arizona Fuels Corp.*, 614 P.2d 636, 639 (Utah 1980). Like most states, Utah requires a shareholder bringing a derivative action to describe in the complaint the efforts he made to have the directors or shareholders redress his problem, and state why these efforts were fruitless. *See* Utah R.Civ.P. 23.1 (Michie 1992). Mills' complaint contained no such allegations. Accordingly, even if the district court had applied Utah law, it would have dismissed Mills' fiduciary breach claim.

### CONCLUSION

Finding all the plaintiffs' arguments without merit, we affirm the decision of the district court.