Peter **BROOKE**, Plaintiff,

v.

Daniel **SCHLESINGER**, Mark Sugel, Daniel Stieglitz, George Schlesinger, Anthony Ottimo, Louis Ottimo, and D.A.L. Accessories, Inc., Defendants.

No. 94 Civ. 8818 (DC).

United States District Court,
S.D. New York.

Sept. 25, 1995.

**1080**

Judd Burstein, P.C. by Judd Burstein, Joshua F. Scheier, New York City, for Plaintiff Peter Brooke.

Andrews & Kurth, L.L.P. by Arthur D. Felsenfeld, Maura Fecher Carlin, New York City, for Defendant Stieglitz.

Nathan & Brecher, L.L.P. by David J. Nathan, Stuart Antell, New York City, for Defendant Sugel.

## MEMORANDUM DECISION

CHIN, District Judge.

This is a civil action brought pursuant to the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. § 1964(c). The complaint alleges violations of Section 1962(c) (conducting affairs of enterprise affecting interstate commerce through pattern of racketeering activity), Section 1962(d) (conspiracy to violate Section 1962(c)), and common law fraud.[1] Defendants Daniel Stieglitz ("Stieglitz") and Mark Sugel ("Sugel") move to dismiss the claims against them under either Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted or Rule 9(b) for failure to plead fraud with sufficient particularity. Plaintiff Peter Brooke ("Brooke") opposes these motions and requests leave to amend the complaint if the motions are granted. For the reasons set forth below, the motion to dismiss is granted with respect to defendant Stieglitz but denied with respect to defendant Sugel. Brooke's request for leave to amend is granted.

## BACKGROUND [2]

Brooke and defendant Daniel Schlesinger ("Schlesinger") founded Net 30 Accessories, Inc. ("Net 30") in 1990, each owning 50% of the corporation's stock. Brooke, the Vice President of Net 30, contributed the capital and personally guaranteed the corporation's factoring agreement,[3] first with Republic National Bank ("Republic") and later with NationsBanc. Brooke alleges that defendants Schlesinger, Sugel, and Stieglitz, among others, perpetrated a massive fraud at Net 30,

---

1. The complaint also asserts common law libel claims that do not concern the defendants making the instant motions.

2. The facts set forth in the complaint are accepted as true for purposes of deciding defendants' motions to dismiss.

3. Under the factoring agreement, the bank advanced sums to Net 30 against outstanding invoices for goods shipped to the corporation's customers. The bank would later collect Net 30's receivables directly from the customers.

resulting in Brooke's sale of his interest in the company and loss of his investment, as well as subjecting him to liability on his personal guarantee. Schlesinger, the President of the corporation, allegedly commenced his fraudulent activity in 1991 when he diverted funds owed to Net 30 to his personal bank account. Other acts of fraud followed, which will be detailed below. Schlesinger and his father, defendant George Schlesinger, have settled with plaintiff.

Sugel, Vice President and National Sales Manager of Net 30, joined the company in February 1992. By the Winter of 1992, defendants Schlesinger and Sugel commenced a plan to loot Net 30 and Brooke by fraudulently securing advances from Republic and by stealing money directly from the company. It is alleged, on information and belief, based upon information from former Net 30 employees and the existence of a shortfall in the amounts received by the factoring banks, that Schlesinger and Sugel obtained improper advances from Republic by ordering employees of Net 30 to engage in the "invoicing fraud." This scheme included the mailing of fraudulent invoices to Republic from the commencement of the scheme until November 1993 and to NationsBanc from November 1993 until May 1994.

In June 1992, Stieglitz became involved in the fraud when Schlesinger and Sugel hired him as comptroller in order to hide the fraud from Brooke. When Brooke requested daily reports on Net 30's financial condition, Schlesinger, Sugel, and Stieglitz prepared false daily financial reports, which they showed to Brooke, often via facsimile. In addition, at the direction of Schlesinger and Sugel, Stieglitz told Net 30 employees to lie to Brooke regarding the number of "chargebacks" from customers seeking to return goods or obtain proof of delivery should Brooke call on the telephone to inquire about such chargebacks. Stieglitz also instructed employees that they should not permit Brooke to review reports from the bank.

On December 30, 1993, in response to George Schlesinger's statement that he would only reimburse Brooke for losses caused by a different scheme involving Schlesinger if Brooke left the company, Brooke sold his interest in Net 30 back to the company for $176,999.94, to be paid in 26 biweekly installments, and a promise to return to Brooke the remainder of his capital in Net 30. Schlesinger, Sugel, and George Schlesinger knew but did not tell Brooke that Net 30 would be unable to fulfill these obligations ("the scheme to defraud Brooke out of his interest in Net 30").

In January 1994, the scheme entered a new phase involving the formation of a corporation, D.A.L., to enable Net 30 to avoid its obligations to NationsBanc under the factoring agreement. Schlesinger, Sugel, and George Schlesinger enlisted defendants Anthony and Louis Ottimo (the "Ottimos") to help them perpetrate this scheme by managing the day to day operations of Net 30. With the knowledge of the other defendants, the Ottimos proceeded to loot the company by hiding inventory at a Long Island warehouse and instructing customers to make payments directly to D.A.L. instead of to NationsBanc (the "NationsBanc fraud"). Sugel participated in this scheme until February 1994. Meanwhile, the invoicing fraud continued until May 1994.

Stieglitz argues that the RICO claim asserted against him is deficient in three respects: (1) it fails to allege predicate acts of mail and wire fraud; (2) it fails to establish the continuity prong of the pattern of racketeering activity requirement; and (3) it fails to allege that Brooke's injuries were proximately caused by Stieglitz's alleged racketeering activity. Stieglitz also moves to dismiss the RICO conspiracy claim on the grounds that the complaint does not allege the elements of a conspiracy. In addition, Stieglitz moves to dismiss Brooke's common law fraud claim. Finally, Stieglitz contends that the fraud claims asserted against him are not pleaded with the particularity required by Rule 9(b). Sugel adopts these bases for the motion to dismiss and emphasizes that the claims against him do not meet the particularity requirements of Rule 9(b).

## DISCUSSION

### I. Standards for Motion to Dismiss

In ruling upon defendants' motions to dismiss under Rules 9(b) and 12(b)(6), the Court

**1082**

must view the complaint in the light most favorable to the plaintiff, accepting all allegations contained in the complaint as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Annis v. County of Westchester,* 36 F.3d 251, 253 (2d Cir.1994) (Rule 12(b)(6) motion); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir. 1989) (Rule 9(b) motion). All reasonable inferences are to be drawn in favor of the plaintiff, and the complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686; *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Christ Gatzonis Elec. Contractor, Inc. v. New York City Sch. Constr. Auth.,* 23 F.3d 636, 639 (2d Cir.1994).

To state a civil RICO claim, Brooke must show that defendants (1) conducted or participated in the conduct of (2) an enterprise's affairs (3) through a pattern (4) of racketeering activity (5) that caused injury to plaintiff's business or property. *See* 18 U.S.C. § 1962(c); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 498, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *McLaughlin v. Anderson,* 962 F.2d 187, 190 (2d Cir.1992).

## II. *Stieglitz's Motion to Dismiss*

### A. *RICO Claim*

#### 1. *Predicate Acts*

To plead a pattern of racketeering activity, Brooke must establish that each defendant committed at least two acts of racketeering activity ("predicate acts") within a ten year period. 18 U.S.C. § 1961(5). The statute defines "racketeering activity" to include wire fraud (18 U.S.C. § 1343) and mail fraud (18 U.S.C. § 1341). 18 U.S.C. § 1961(1)(B).

#### a. *Wire Fraud*

■ The first type of predicate act alleged against Stieglitz is wire fraud. The wire fraud statute provides as follows:

Whoever, having devised or intending to devise any scheme or artifice to defraud,

or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication *in interstate or foreign commerce,* any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1343 (emphasis added). In contrast to mail fraud, "[w]ire fraud requires the additional element of a communication crossing state lines." *Center Cadillac, Inc. v. Bank Leumi Trust Co.,* 808 F.Supp. 213, 227 (S.D.N.Y.1992) (citations omitted); *see Scheiner v. Wallace,* 860 F.Supp. 991, 997 (S.D.N.Y.1994) (to allege predicate acts of mail or wire fraud, respectively, complaint must claim that defendant "used the United States mails or interstate wires to further" fraudulent scheme); *Utz v. Correa,* 631 F.Supp. 592, 596 (S.D.N.Y.1986) ("[T]he predicate act of wire fraud requires an interstate telephone call.").

■ According to the complaint, Stieglitz instructed Net 30 employees to lie to Brooke *if* he called to inquire about chargebacks. The complaint later indicates that these phone calls were in fact made. Even if the phone calls were made, however, there is no allegation that the phone calls were transmitted in interstate commerce. Where all parties to the phone call are residents of or maintain offices in the same state, and the complaint is otherwise silent, the only reasonable inference to be drawn is that the call is intrastate. *See, e.g., McCoy v. Goldberg,* 748 F.Supp. 146, 154 (S.D.N.Y.1990) ("Where all parties are New York residents, all telephone calls are presumed to be intrastate and, absent any indication otherwise, the predicate act of wire fraud is not stated."); *Utz,* 631 F.Supp. at 595–96. Net 30 is apparently located in New York[4] and the complaint states that Brooke is a resident of New York State. Since the alleged phone calls were between Net 30 and Brooke, it is not

---

4. The complaint does not actually state that Net 30 is located in New York; however, because the parties seem to assume this fact, the Court will treat Net 30 as a New York corporation for purposes of this motion.

reasonable to infer from the facts alleged that any such phone calls were interstate.

The complaint also states that certain false reports were faxed to Brooke and that funds were transferred between Net 30's bank account and the factoring banks, but it does not claim that these communications were transmitted in interstate or foreign commerce. Because the complaint does not allege Stieglitz's use of interstate wires to further the fraud, the phone calls and other wire communications involved in the invoicing fraud cannot serve as predicate acts grounding a civil RICO claim against him.

### b. Mail Fraud

■ The complaint also purports to allege that Stieglitz performed predicate acts of mail fraud. The elements of mail fraud are the existence of a fraudulent scheme and a mailing in furtherance of the scheme.[5] *McLaughlin*, 962 F.2d at 190–191 (citations omitted); *see United States v. Wallach*, 935 F.2d 445, 461 (2d Cir.1991) (mail fraud involves (1) scheme to defraud, (2) money or property, and (3) use of mails to further scheme).

■ Although defendant need not have personally mailed a letter, it must be shown " '1) that the defendant "caused" the mailing ... and 2) that the mailing was for the purpose of executing the scheme or ... "incidental to an essential part of the scheme." ' " *McLaughlin*, 962 F.2d at 191 (*citing United States v. Bortnovsky*, 879 F.2d 30, 36 (2d Cir.1989) (*quoting Pereira v. United States*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954))). *See Bortnovsky*, 879 F.2d at 39 (commission of act "with knowledge that the use of mails will follow in the ordinary course of business, or where such can reasonably be foreseen" sufficient) (cita-

tion omitted); *United States v. Carpenter*, 791 F.2d 1024, 1035 (2d Cir.1986), *aff'd*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987).

■ The complaint does not allege that Stieglitz "caused" any mailings in furtherance of the invoicing fraud. While certain allegations include Stieglitz with defendants Schlesinger and Sugel, the alleged plotters of the invoicing scheme,[6] the paragraphs detailing the scheme do not. The complaint primarily contends that Stieglitz concealed the financial evidence of the invoicing fraud, thereby enabling Schlesinger and Sugel to continue the fraud unbeknownst to Brooke. *See* Cmplt. ¶ 23 ("With Stieglitz on board, Schlesinger and Sugel were free to and did increase the scope of the invoicing fraud.").

Notably, Stieglitz is not included in paragraph 20 of the complaint, which alleges that Schlesinger and Sugel secured improper advances from the banks by ordering Net 30 employees to engage in the invoicing fraud. The complaint does not state that Stieglitz directed employees to engage in the invoicing fraud; rather, he merely directed them to conceal its effects from plaintiff. The conclusory statements including Stieglitz in the invoicing scheme, in the face of the more specific allegations of his role in the cover-up, are not sufficient to support an inference that he caused the mailings performed in furtherance of the invoicing fraud. Therefore, the complaint fails to allege that Stieglitz committed any predicate acts of mail fraud. As a consequence, Brooke's civil RICO claim against Stieglitz must fail because the complaint does not adequately allege that Stieglitz committed any predicate acts underlying such a claim. Because Brooke is granted leave to amend his complaint, I will briefly

---

5. The mail fraud statute, 18 U.S.C. § 1341, provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to

be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

6. For example, ¶ 26 refers to "Schlesinger's, Sugel's, and Stieglitz'[s] scheme," and ¶ 36(b) indicates that the purpose of the invoicing scheme and cover-up was to "line the pockets" of Schlesinger, Sugel, and Stieglitz.

discuss the other elements of the RICO claim that are challenged by Stieglitz and the other grounds for his motion.

### 2. Pattern of Racketeering Activity

■ Defendant Stieglitz contends that the predicate acts he allegedly committed as part of a single fraudulent scheme were not sufficiently continuous to constitute a "pattern of racketeering activity" because Stieglitz only served as comptroller of Net 30 from June 1992 to November 1993. To establish a pattern of racketeering activity, it must be shown that "the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989); *Beauford v. Helmsley*, 865 F.2d 1386, 1391 (2d Cir.1989), *cert. granted and judgment vacated,* 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 *aff'd en banc,* 893 F.2d 1433 (2d Cir.), *cert. denied,* 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989).

■ Continuity can be either open- or closed-ended, meaning that it can be established through past conduct that by its nature extends into the future, threatening repetition, or by a closed period of repeated conduct. *H.J. Inc.*, 492 U.S. at 241, 109 S.Ct. at 2902. A closed-ended pattern consists of "a series of related predicates extending over a substantial period of time." *Id.* at 242, 109 S.Ct. at 2902. In *H.J. Inc.*, the Supreme Court stated that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct" do not fulfill the continuity requirement. *Id.* In addition, the Second Circuit has stated that the predicate acts must be "neither isolated nor sporadic," *see Beauford*, 865 F.2d at 1391, and that there is no bright line test for determining continuity. *See Metromedia Co. v. Fugazy,* 983 F.2d 350, 369 (2d Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). Although courts have held that relatively short-lived schemes with single purposes usually fail to meet the continuity requirement, *see, e.g., Barsam v. Pure Tech Int'l, Inc.,* 864 F.Supp. 1440, 1450

(S.D.N.Y.1994); *GICC Capital Corp. v. Technology Fin. Group, Inc.*, 891 F.Supp. 64, 67 (D.Conn.1994), there is no requirement that a defendant participate in more than one scheme. *See H.J. Inc.*, 492 U.S. at 240, 109 S.Ct. at 2901 (involvement in multiple schemes is "highly relevant" to continuity, but not essential).

■ Should Brooke succeed in amending his complaint to plead predicate acts of mail or wire fraud on the part of Stieglitz, the requirement of pleading continuity is likely to be met. Brooke alleges that Stieglitz prepared false reports on a daily basis for a period of 17 months. Periods of 10, 18, 19, and 20 months have been held sufficient to establish continuity. *See Farberware, Inc. v. Groben,* 764 F.Supp. 296, 306 (S.D.N.Y.1991) (given allegation of "repeated similar acts over ten-month period," motion to dismiss denied); *Dooner v. NMI Ltd.,* 725 F.Supp. 153, 161–62 (S.D.N.Y.1989) (single scheme comprised of number of predicate acts over 18–month period sufficient to withstand motion to dismiss); *Metromedia,* 983 F.2d at 369 (*citing United States v. Pelullo,* 964 F.2d 193, 210 (3d Cir.1992) (19 months); *United States v. Stodola,* 953 F.2d 266, 270 (7th Cir.) (20 months), *cert. denied,* — U.S. —, 113 S.Ct. 104, 121 L.Ed.2d 63 (1992)). Thus, because the complaint indicates that Stieglitz committed repeated acts of concealing the invoicing fraud for a substantial period of time, it adequately alleges the continuity element.[7]

### 3. Causation of Injury

■ Section 1964(c) of RICO provides a right of action to "[a]ny person injured in his business or property *by reason of* a violation of section 1962 of this chapter...." 18 U.S.C. § 1964(c) (emphasis added). The defendant's RICO violation must be the proximate cause of plaintiff's injury, as well as the "but for" cause. *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992); *First Nationwide Bank v. Gelt Funding*

---

**7.** Additionally, the scheme may suffice as an open-ended pattern. The invoicing fraud continued after Stieglitz's departure from Net 30, indicating that the fraudulent conduct posed a threat of repetition.

*Corp.,* 27 F.3d 763, 769 (2d Cir.1994); *Standardbred Owners Ass'n v. Roosevelt Raceway Assocs.,* 985 F.2d 102, 104 (2d Cir.1993); *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23 (2d Cir.1990). There must be a direct relationship between the defendant's RICO violation and the plaintiff's injuries, *First Nationwide,* 27 F.3d at 769; *Standardbred,* 985 F.2d at 104, and the Court must ask whether "the defendant's acts 'are a substantial factor in the sequence of responsible causation,' and whether 'the injury is reasonably foreseeable or anticipated as a natural consequence.'" *Standardbred,* 985 F.2d at 104 (*citing Hecht,* 897 F.2d at 23–24). Brooke alleges that Stieglitz concealed the financial evidence of the invoicing fraud, which enabled that fraud to continue, thereby increasing the shortfall in the factoring arrangement and subjecting Brooke to increased liability on his personal guarantee. The complaint also alleges that the invoicing fraud and its concealment destroyed Net 30 and deprived Brooke of the opportunity to manage the company back to health, causing him to lose his investment and potential profits. These claims adequately allege that the invoicing fraud and the concealment of its financial consequences were the direct and substantial, as well as foreseeable, causes of Brooke's injury.

## B. *RICO Conspiracy Claim*

 To state a RICO conspiracy claim, the complaint must allege an agreement to commit two or more predicate acts. *See McLaughlin,* 962 F.2d at 194; *Hecht,* 897 F.2d at 25. In assessing the adequacy of the RICO conspiracy claim, the Court is mindful that Rule 9(b) does not apply to the conspiracy element. *See Hecht,* 897 F.2d at 26 n. 4.

The RICO conspiracy claim against Stieglitz must be dismissed because the complaint fails to allege that he agreed to commit two or more predicate acts of wire or mail fraud, as discussed above. While Brooke does allege that each defendant agreed to commit at least two predicate acts as described in the substantive portions of the complaint, the failure to plead adequately predicate acts with respect to Stieglitz necessitates the dismissal of the RICO conspiracy claim against

him. *See McCormack Int'l Corp. v. Vohra,* 858 F.Supp. 415, 423 (S.D.N.Y.1994) (conspiracy claim dismissed in light of failure to state substantive RICO claims).

## C. *Common Law Fraud Claim*

 In his Fifth Claim for Relief, Brooke asserts common law fraud claims against Sugel, Stieglitz, and George Schlesinger. In light of the dismissal of the RICO claims against Stieglitz, and the early stage of the litigation, I decline to exercise supplemental jurisdiction over this claim against Stieglitz, which arises solely under state law. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Martz v. Incorporated Village of Valley Stream,* 22 F.3d 26, 32 (2d Cir.1994); *Miller v. Lovett,* 879 F.2d 1066, 1071 (2d Cir.1989). Therefore, because all federal claims against Stieglitz are dismissed, and there apparently is no diversity of citizenship, Brooke's common law fraud claim against Stieglitz is dismissed for lack of subject matter jurisdiction. Brooke may renew this claim should he amend his complaint.

## D. *Rule 9(b) Motion*

 Stieglitz contends that the complaint fails to allege his participation in the fraud with the particularity required by Rule 9(b). It is clear that the Rule 9(b) pleading requirements applicable to general fraud claims apply to claims of mail and wire fraud asserted as predicate acts underlying a civil RICO claim. *See McLaughlin,* 962 F.2d at 191; *Browning Ave. Realty Corp. v. Rosenshein,* 774 F.Supp. 129, 137 (S.D.N.Y.1991). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Second Circuit has described this requirement as follows: "[T]he complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993) (*citing Cosmas,* 886 F.2d at 11). In addition, the complaint must state

how the mailing furthers the fraudulent scheme. *McLaughlin,* 962 F.2d at 187.

■■■■ The particularity requirement of Rule 9(b) must be read in concert with Rule 8 of the Federal Rules of Civil Procedure, which requires a short, plain statement of the facts upon which a claim is based. *See Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir.1990) *(citing DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987)). In addition, the particularity requirement is eased where the facts comprising the alleged fraud are "peculiarly within the opposing party's knowledge," allowing pleading based upon information and belief, provided the facts underlying the belief are stated. *DiVittorio,* 822 F.2d at 1247.

■■■■ Brooke avers that, while employed at Net 30 from June 1992 to November 1993, Stieglitz prepared false financial reports on a daily basis and instructed Net 30 employees to lie to Brooke should he call to inquire about the number of chargebacks. The financial reports and other communications were fraudulent in that they did not accurately reflect the company's financial condition, and they furthered the invoicing scheme by hiding its effects from Brooke. These allegations provide Stieglitz with notice of the fraudulent acts with which he is charged, and, therefore, the complaint is pleaded with adequate particularity.

## III. *Sugel's Motion to Dismiss*

### A. *RICO Claim*

#### 1. *Predicate Acts*

■■■■ Brooke has adequately pleaded predicate acts of mail fraud with respect to Sugel. The complaint clearly alleges a scheme to defraud Brooke of money and use of the mails in furtherance of that scheme. It alleges that Sugel, together with Schlesinger, planned and ordered the execution of the invoicing fraud, which involved the mailing of fraudulent invoices from Net 30 to Republic from the start of the scheme in 1992 until November 1993 and to Nations-Banc from November 1993 until May 1994. The mailing of these fraudulent invoices enabled Schlesinger and Sugel to obtain improper advances from the factoring banks. Because the complaint states that Sugel directed employees to engage in the invoicing fraud, it alleges that he caused the mailings performed in furtherance of that fraud.

#### 2. *Pattern of Racketeering Activity*

■■■■ Brooke alleges sufficient continuity of racketeering activity on the part of Sugel to withstand a motion to dismiss. The complaint alleges that Sugel was involved in various related schemes from February 1992 through at least February 1994. In particular, Brooke maintains that the invoicing scheme involved repeated mailings of fraudulent invoices, which were related in that they all served to secure improper advances from the factoring banks. Therefore, because the complaint alleges that Sugel caused the mailing of invoices for at least two years, it alleges that he committed related predicate acts over a substantial period of time, and is sufficient to state the continuity element.[8]

#### 3. *Causation of Injury*

■■■■ Brooke plainly alleges that the invoicing fraud and its concealment caused him damages by destroying Net 30, thereby depriving him of the opportunity to recoup his investment and earn potential profits, by inducing him to sell his interest in the company for virtually nothing, and by subjecting him to a law suit on his personal guarantee. *See* Cmplt. at ¶ 36. These allegations indicate that the predicate acts involved in the invoicing scheme were a direct and substantial factor in the losses claimed by Brooke. The allegations also support an inference that Brooke's losses were reasonably foreseeable to Sugel, the Vice President and National Sales Manager of Net 30. Therefore, proximate causation is adequately alleged.

---

8. Moreover, as mentioned above, involvement in multiple schemes bolsters a finding of continuity. In addition to the invoicing scheme, the complaint implicates Sugel in the scheme to defraud Brooke out of his interest in Net 30 and the NationsBanc fraud. The allegation that the NationsBanc fraud continued beyond Sugel's departure indicates a threat of continued criminal activity, which supports a finding of open-ended continuity.

## B. *RICO Conspiracy Claim*

■ The complaint alleges that the defendants "each agree[d] personally to commit at least two of the racketeering acts alleged" in the substantive portions of the complaint. Cmplt. ¶ 60. The factual allegations supporting the substantive RICO claims, discussed above, are adequate to "allege some factual basis for a finding of a conscious agreement among the defendants" Sugel and Schlesinger to commit at least two predicate acts of mail fraud. *See Hecht,* 897 F.2d at 26 n. 4. Therefore, the motion to dismiss the RICO conspiracy claim against Sugel is denied.

## C. *Common Law Fraud Claim*

■ The common law fraud claim asserted against Schlesinger, Sugel, and George Schlesinger as Plaintiff's Third Claim for Relief[9] alleges that these defendants:

[F]raudulently induced plaintiff into entering into the December 30 agreement [to sell his interest in Net 30 back to the company] all the while knowing, but not revealing, that the invoicing fraud had left Net 30 in a financial position such that it would have been impossible for Net 30 to honor its obligations under the December 30 agreement. Had defendants revealed Net 30's true financial condition, the existence of the ongoing fraud, and Net 30's complete inability to meet its obligations under the December 30 [agreement], plaintiff would not have entered into that agreement.

Cmplt. ¶ 63. Under New York law, the elements of a common law fraud claim are " '(1) that [the defendant] made a misrepresentation (2) as to a material fact (3) which was false (4) and known to be false by [the defendant] (5) that was made for the purpose of inducing [the plaintiff] to rely on it (6) that [the plaintiff] rightfully did so rely (7) in ignorance of its falsity (8) to his injury.' " *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (*quoting Murray v. Xerox Corp.,* 811 F.2d 118, 121 (2d Cir.1987)). The com-

plaint alleges that defendants made misrepresentations to Brooke through the false daily financial reports and failed to reveal material facts concerning the fraud and financial status of the company.[10] Brooke claims that these misrepresentations and omissions were material to his decision to sell his interest in Net 30, because he would not have entered into the December 30 agreement if he had known the true financial condition of the company.

■ Sugel argues that the complaint fails to plead the scienter element of the fraud claim. When pleading scienter, the particularity requirements of Rule 9(b) do not apply. *See* Fed.R.Civ.P. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally."); *Cohen,* 25 F.3d at 1173 (allegations of scienter need not contain "great specificity"). However, the complaint must allege facts creating "a strong inference of fraudulent intent." *Mills,* 12 F.3d at 1176 (citations omitted); *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987). The complaint alleges that Sugel, as well as Schlesinger and George Schlesinger, knew, but did not tell Brooke, that the financial condition of Net 30 was such that the company would be unable to pay Brooke for the sale of his interest in the company. In addition, the allegations of affirmative misrepresentation in connection with the invoicing fraud give rise to a strong inference of fraudulent intent.

The complaint fairly alleges that Sugel, Schlesinger, and George Schlesinger induced Brooke to sell his interest in Net 30 through misrepresentations concerning Net 30's financial condition, that Brooke's reliance was reasonable due to his relationship of trust with Schlesinger, that Brooke was unaware of the true financial position of Net 30, and that Net 30 did not satisfy its obligations under the December 30 agreement. Because the complaint contains all the elements of the common law fraud claim, Sugel's motion to dismiss is denied.

**9.** Sugel is also included in the common law fraud claim against Stieglitz and George Schlesinger contained in the Fifth Claim for Relief.

**10.** In his Memorandum in Opposition to the motions, plaintiff notes that defendants had an obligation to reveal these facts, due to the fiduciary duty defendants owed to plaintiff as officers of Net 30.

**1088**

#### D. *Rule 9(b) Motion*

 The primary basis for Sugel's motion to dismiss is that the allegations of fraud made against him are not pleaded with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure. Examining the complaint in the light most favorable to the plaintiff, the elements of mail fraud are alleged against Sugel with sufficient particularity. According to the complaint, as part of a plan to loot the company, Schlesinger and Sugel directed Net 30 employees, specifically Henry Tiru and Nidia Quiones, to engage in the invoicing fraud from 1992 to 1994. The invoices sent from Net 30 employees to Republic and NationsBanc were fraudulent in that they invoiced orders before they were due to be shipped, billed the same order more than once, and invoiced orders that had never been made. These invoices furthered the scheme by enabling Schlesinger and Sugel to secure improper advances from the banks.

Sugel argues that the complaint "fails to provide any specific allegations of [his] involvement" in the schemes implicating him. Memorandum of Law in Support of Motion to Dismiss the Complaint against Defendant Mark Sugel at 5. It is true that the complaint does not describe Sugel's specific role or conduct in the invoicing fraud and other schemes, as compared to Schlesinger and other defendants named in those schemes, but the allegations nevertheless clearly and directly link Sugel to those schemes.[11] Rather than levelling fraud and RICO claims against the defendants collectively, the complaint specifically names the particular individuals involved in each aspect of the fraud. Unlike the complaint in *Mills*, cited by Sugel, the complaint in the instant case does allege that Sugel personally participated in the fraud, particularly the invoicing scheme. *See Mills*, 12 F.3d at 1175. In addition, it has been held in the securities fraud context that where the defendants are insiders, as they are here, it is not necessary to specify the conduct of each defendant. *See Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir.1986); *Pellman v. Cinerama, Inc.*, 503 F.Supp. 107, 111 (S.D.N.Y.1980).

Considering that many of the details of the scheme are peculiarly within the defendant's knowledge,[12] these claims allege the required elements of mail fraud with sufficient particularity to give Sugel notice of the claims asserted against him. *See Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir.1990) (securities fraud).

### CONCLUSION

For the foregoing reasons, the motion to dismiss the claims against defendant Stieglitz is granted. The motion to dismiss the claims against defendant Sugel is denied. Plaintiff is granted leave to amend the complaint within 30 days hereof.

SO ORDERED.

---

11. For example, Brooke alleges that Schlesinger and Sugel commenced the plan to loot Net 30, ordered Net 30 employees to execute the scheme, and arranged for Stieglitz to become comptroller to conceal the fraud. Sugel also allegedly prepared false financial reports. The complaint states that Schlesinger, Sugel, and George Schlesinger schemed to defraud Brooke out of his interest in Net 30 by inducing Brooke to sell his interest back to the company, when they knew that Net 30 would be unable to perform its obligations under this agreement. While the complaint states that it was George Schlesinger's threats that finally prompted Brooke to enter the December 30 agreement, it also states that "Brooke engaged in numerous telephone conversations with defendants Schlesinger, Sugel and George Schlesinger during the course of negotiating the December 30 agreement." Cmplt. ¶ 50. Finally, the complaint specifically names Sugel among those instigating the NationsBanc fraud.

12. For example, the mailings allegedly performed in furtherance of the invoicing scheme were sent from Net 30 to the factoring banks, not to plaintiff.