**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**DCI TELECOMMUNICATIONS, INC., Joseph J. Murphy, and Russell B. Hintz, Defendants.**

**and**

**Grace P. Murphy, Relief Defendant.**

**No. 00 Civ. 4664 (RWS).**

United States District Court, S.D. New York.

Dec. 5, 2000.

Securities and Exchange Commission, Washington, DC, Debra Patalkis, Reid A. Muoio, William R. Baker, III, Lawrence A. West, Russell G. Ryan, of counsel, for Plaintiff.

Greenberg Traurig, New York City, Robert A. Horowitz, of counsel, for Defendants.

## OPINION

SWEET, District Judge.

Defendants DCI Telecommunications, Inc. ("DCI"), Joseph J. Murphy ("Murphy"), Russell B. Hintz ("Hintz"), and relief defendant Grace P. Murphy (collectively "Defendants") have moved to dismiss the First, Second, and Sixth Claims of the complaint in their entirety and the Fifth and Seventh Claims in part, pursuant to Rule 12(b)(6), Fed.R.Civ.P. For the reasons set forth below, the motion is denied.

### The Parties

Plaintiff Securities and Exchange Commission ("SEC") is a governmental agency charged with the task of ensuring compliance with federal securities laws.

DCI is a Colorado corporation headquartered in Stratford, Connecticut.

Murphy, a Connecticut resident, is the Chairman of the Board, Chief Executive Officer, President, and a major shareholder of DCI.

Hintz, a Connecticut resident, is the Chief Financial Officer of DCI.

Grace Murphy resides in Connecticut with her husband, Joseph Murphy.

### Background

This case involves alleged violations of Generally Acceptable Accounting Principles ("GAAP") which, if true, may constitute violations of the books and records provisions and the reporting provisions of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), (the "Exchange Act"), as well as the anti-fraud provisions of the Securities Act of 1933, 15 U.S.C. §§ 77q(a)(2) & (3), (the "Securities Act").

Specifically, the complaint alleges that the Defendants improperly accounted for seven acquisitions and grossly overvalued a purported $15 million contract and $5 million promissory note, which caused the financial statements in five Forms 10–K and twelve Forms 10–Q that DCI filed with the SEC over a five-year period to be materially false and misleading. DCI's SEC filings allegedly overstated their assets by 40% to 1408% during this period. In addition, the complaint alleges that DCI unlawfully raised additional funds by causing its employees to sell S–8 stock to the public and then "kick back" sales proceeds to DCI.

On August 18, 2000, Defendants moved to dismiss the First, Second, and Sixth Claims in the Complaint in their entirety, and to dismiss the control person elements of the Fifth and Seventh Claims. In brief, the defendants contend that because the Complaint fails to aver that the alleged GAAP violations were intended to, or did, have any impact on DCI's stock price, the fraud allegations fail to state a claim as a matter of law. With regard to the sale of unregistered securities claim, Defendants contend that the SEC has failed to allege the necessary element of a preexisting plan to ensure DCI received the benefit of its employees' sale of S–8 stock to the public.

The SEC filed a memorandum in response on September 19, 2000, and the motion was deemed fully submitted upon the filing of the Defendants' reply memorandum on September 27, 2000.

## Discussion

### I. Motion to Dismiss

In reviewing a motion to dismiss under Rule 12(b)(6), a court must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993) (*citing IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir.1993)). Dismissal is warranted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). *See also Bass v. Jackson*, 790 F.2d 260, 262 (2d Cir.1986).

### A. Claims 1 and 2 State Claims for Violations of the Anti–Fraud Provisions of the Securities Act and Exchange Act, and Claim 5 States A Control Person Claim Based on the Acts Alleged in Claims 1 and 2

Claims 1 and 2 allege that the Defendants violated Section 17 of the Securities Act and Rule 10b–5 of the Exchange Act.[1] Section 10(b) was designed to protect investors involved in the purchase and sale of securities by requiring full disclosure. *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477–78, 97 S.Ct. 1292, 1303–04, 51 L.Ed.2d 480 (1977).

Violation of the anti-fraud statutes requires proof that the Defendants used interstate commerce, and made material false or misleading misrepresentations and omissions in connection with the offer, purchase or sale of securities, with scienter. *Aaron v. SEC*, 446 U.S. 680, 697, 100 S.Ct.

1945, 1955, 64 L.Ed.2d 611 (1980); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976); *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1466–67 (2d Cir.1996). However, neither section 17(a)(2) nor section 17(a)(3) of the Securities Act requires scienter. The Defendants argue that in order to make out the requisite materiality, scienter and "in connection with" elements of a securities fraud claim, a complaint must allege that the price manipulations were intended to, and in fact did, have some impact on stock prices. Def. Mem. at 3–4. Both parties agree that, if true, the violations of GAAP meet the element of misrepresentations or omissions. *See* Def. Mem. at 3.

#### 1. Materiality

A statement or omission is material if "there is a substantial likelihood that a reasonable shareholder would consider it important" or, in other words, "there [is] a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable shareholder as having significantly altered the 'total mix' of information available." *Basic, Inc. v. Levinson*, 485 U.S. 224, 232, 108 S.Ct. 978, 983, 99 L.Ed.2d 194 (1988) (adopting standard of *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)). "When presented with a Rule 12(b)(6) motion, 'a complaint may not properly be dismissed . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their impor-

---

1. Rule 10b–5 provides:
   It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
     (a) To employ any device, scheme, or artifice to defraud,
     (b) To make any untrue statement of a material fact or to omit to state a material

fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
     (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
   17 C.F.R. § 240.10b–5 (1990).

tance.'" *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 162 (2d Cir.2000) (*quoting Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985)).

■ The Defendants argue that the accounting irregularities were not material because there is no allegation that DCI stock price was affected by the overvaluation of assets in the SEC filings. However, the Supreme Court has warned against "confining materiality to a rigid formula." *Basic*, 485 U.S. at 236, 108 S.Ct. at 986. There is no requirement that stock prices fluctuate as a result of a defendant's misstatements or omissions in order for them to be material. *See United States v. Bilzerian*, 926 F.2d 1285, 1298 (2d Cir.1991) ("whether a public company's stock price moves up or down or stays the same after [filing] does not establish the materiality of the statements made, though stock movement is a factor the jury may consider relevant.").

■ In this case, DCI allegedly overvalued its assets by 40% to 1408% each year over a five-year period in five Forms 10–K and twelve Forms 10–Q, and then advertised "record breaking" revenues in the company's annual reports, press releases, and on its website. Compl. ¶¶ 1–3, 16–17, 29, 31, 36, 47–51, 55–60, 65, 70–75, 80–85, 90, 102–11. Because the complaint alleges that the Defendants emphasized their false earnings to potential investors, and because "earnings reports are among the pieces of data that investors find most relevant to their investment decisions," *Ganino*, 228 F.3d at 164 (citations omitted), it is reasonable to infer that the misstatements or omissions were not "obviously unimportant" to the investing public. Therefore, the materiality element has been adequately pled.

## 2. Misleading Misrepresentations "In Connection With" the Offer, Purchase, or Sale of Securities

■ Defendants advance essentially the same argument with respect to the "in connection with" element of securities fraud. This element requires a plaintiff to allege that false financial information was disseminated into the marketplace in a manner reasonably calculated to influence the investing public. *See Ames Department Stores, Inc. Stock Litig.*, 991 F.2d 953, 962, 966 (2d Cir.1993) (finding "in connection with" element satisfied by allegation that corporation and its officers disseminated false financial information into the marketplace through press releases, annual report, Form 10–K and two forms 10–Q); *see generally Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 11–12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971) (holding that deceptive practices "touching" upon the sale of securities fulfills the "in connection with" requirement).

As with the materiality element, the Second Circuit has specifically held that there is no requirement that a complaint must allege stock fluctuation in order to plead adequately the "in connection with" element. *See Heit v. Weitzen*, 402 F.2d 909, 913 (2d Cir.1968) (finding "in connection with" element met because "[i]t is reasonable to assume that investors may very well rely on the material contained in false corporate financial statements which have been disseminated in the market place, and in so relying may subsequently purchase securities of the corporation."), *cert. denied*, 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969); *SEC v. Texas Gulf Sulphur Co.*, ("TGS"), 401 F.2d 833, 860 (2d Cir.1968) (en banc) (construing "in connection with" requirement to require "that the device employed, whatever it might be, be of a sort that would cause reasonable investors to rely thereon, and, in connection therewith, so relying, cause them to purchase or sell a corporation's securities.").

If true, the facts that the Defendants filed false financial statements with the SEC, hyped them in annual reports, press releases and on DCI's website, and used them to obtain financing, adequately raise the inference that the accounting irregu-

larities were disseminated in a manner that was "reasonably calculated" to influence the investing public. The SEC has adequately pled the "in connection with" element.

### 3. Scienter

■ In order to raise the inference of scienter sufficiently to withstand a motion to dismiss, a plaintiff must allege either (a) facts to show that defendants had both motive and opportunity to commit fraud; or (b) facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *See In re Carter–Wallace Securities Litigation,* 220 F.3d 36, 39 (2d Cir.2000) (*"Carter–Wallace II"*); *In re Livent, Inc. Secs. Litig.,* 78 F.Supp.2d 194 (S.D.N.Y.1999) (*quoting Press v. Chemical Investment Svcs. Corp.,* 166 F.3d 529, 537– 38 (2d Cir.1999)). GAAP violations, when coupled with evidence of fraudulent intent, make out this element. *Novak v. Kasaks,* 216 F.3d 300, 309 (2d Cir.2000).

The complaint repeatedly alleges that, as "lifelong accounting professionals," the Defendants "knew or were reckless in not knowing," that DCI's accounting violated GAAP and grossly overrepresented DCI's value. Compl. ¶¶ 6, 35, 40, 46, 54, 57–59, 63, 69, 72–74, 78–79, 82–84, 89, 95–96, 100– 01, 104–06. In addition to ten major GAAP violations, Compl. ¶¶ 34–35, 39–40, 45–46, 54, 63, 69, 78–79, 95–96, 100–01, the complaint alleges other acts designed to deceive, namely that the Defendants hyped the false accounting statements in annual reports, press releases and on DCI's website, and used them to obtain financing. *See Livent,* 78 F.Supp.2d at 215–16.

The facts alleged in the complaint, if true, do not present a case of "misguided optimism," *Shields v. Citytrust Bancorp,* 25 F.3d 1124, 1129 (2d Cir.1994), but rather show a pattern of knowingly misleading practices that overwhelmingly overstated revenues, made with an intent to defraud. *See Novak,* 216 F.3d at 311 (finding that allegations of materially misleading public statements regarding knowingly inflated financial information met scienter requirement); *In re MicroStrategy, Inc.,* No. Civ.A. 00–473–A, 2000 WL 1370410 (E.D.Va. Sept.15, 2000) (noting relevance of magnitude of financial overstatements, the pervasiveness and repetitiveness of the alleged GAAP violations, and relative simplicity of the accounting principles violated to inference of scienter); *In re Livent,* 78 F.Supp.2d at 215–16. The scienter element has been adequately pled.[2]

Claims One and Two state claims for violations of the anti-fraud provisions of the Securities Act and Exchange Act.

As Defendants' challenge to Claim 5 pertains only to the element of fraud as alleged in Claims 1 and 2, Claim 5 also withstands the motion to dismiss.

### B. Claim 6 States a Claim for Violation of Registration Provisions of the Securities Act

■ In Claim 6, the complaint alleges that, at Murphy's directions, the Defendants caused DCI employees to sell S–8 stock to the public and then "kick back" the sales proceeds to DCI in what was in effect a disguised public offering during 1995 and 1996, *see* Compl. ¶¶ 5, 9, 112, 135,

---

2. Defendants suggest that the Court take judicial notice of the Order Instituting Proceedings Pursuant to Rule 102(e) of the Commission's Rules of Practice, Making Findings and Imposing Remedial Sanctions entitled *In the Matter of Richard S. Kondub, CPA, et al.,* No. 3–10242 (S.E.C. June 23, 2000), which found that DCI's accountants had violated GAAP in preparing the SEC filings. However, although good faith reliance on outside auditors is a defense to securities fraud, *see Markowski v. SEC,* 34 F.3d 99, 104–05 (2d Cir.1994), the

facts set forth in the Order do not negate the inference of scienter raised by the pleadings. *See S.E.C. v. Caserta,* 75 F.Supp.2d 79, 95 (E.D.N.Y.1999) (*citing United States v. Erickson,* 601 F.2d 296, 305 (7th Cir.1979) ("If a company officer knows that the financial statements are false or misleading and yet proceeds to file them, the willingness of an accountant to give an unqualified opinion with respect to them does not negate the existence of the requisite intent or establish good faith reliance.")).

thereby circumventing the registration provisions of the Securities Act, sections 5(a) and 5(c), 15 U.S.C. §§ 77e(a), 77e(c). *See SEC v. Cavanagh,* 155 F.3d 129, 133 (2d Cir.1998) (holding that company's employees must register stock before selling to the public despite company's previous registration of stock before issuing it to the employees, because § 5 requirement is transaction-specific). The Defendants contend that no such claim may lie where a complaint fails to allege that there was a preconceived plan to obtain financing for DCI in this manner, or that the stock was issued to employees on the condition that they sell it to the public and turn the proceeds over to DCI. Def. Mem. at 9.

In support of their position, Defendants cite the SEC Releases regarding the adoption of amendments to Form S–8, which described the amendments as an attempt to halt abuse of the registration provisions by companies "nominally" offering or selling registered shares to the employee pursuant to a "prearranged plan" whereby the employee would sell the stock and remit the proceeds to the issuer. However, the Releases state that, in order to counter the abuse of companies' offering stock to employees, who would then sell it publicly and remit the proceeds to the company:

> Following adoption of these amendments, we will continue to take the view that Form S–8 is not available to register offers and sales of securities to either traditional employees or consultants and advisors where:
>
> ! by prearrangement or otherwise, the issuer or a promoter controls or directs the resale of the securities in the public market; or
>
> ! the issuer or its affiliates directly or indirectly receive a percentage of the proceeds from such resales.

Registration of Securities on Form S–8, SEC Releases No. 33–7646, 34–41009, 1999 WL 95488, *6 (S.E.C. Feb. 25, 1999) (footnotes omitted). A violation of the registration provisions exists where the issuing company raises capital via its employees' sale of stock, regardless of the existence a preconceived plan.

Caselaw bears out the view that section 5 is violated when a company reaps proceeds from its employees' sale of stock, even without any other evidence of an intentional plan to elude the registration provisions. *See, e.g., Aaron,* 446 U.S. at 713 n.5, 100 S.Ct. at 1965 ("[t]he prohibition in § 5 of the 1933 Act [ ] against selling securities without an effective registration statement has been interpreted to require no showing of scienter") (citing cases). Regardless of intent, a public company and its officers violate the registration provisions by using employees as conduits for the sale of S–8 stock to the public because the true transaction—the distribution of securities to the public—is not registered. *See SEC v. North Am. Research and Dev. Corp.,* 424 F.2d 63, 71 (2d Cir. 1970) (Sections 5 and 5(a) are "so designed as to prevent any circumvention of the registration requirement by devious and sundry means."); *Matter of Sky Scientific, Inc.,* No. 3–9201, 1999 WL 114405,*31 (S.E.C. March 5, 1999) (finding prima facie case for violation of § 5 where company sold registered securities to employees, who then sold stock to the public without re-registering and then remitted proceeds to the company); *SEC v. Hollywood Trenz, Inc.,* Nos. 3–9597, 3–9598, 1998 WL 214285, *1 (S.E.C. March 4, 1998) (finding that employees had acted as conduits for company's issuing stock to outside investors, in violation of § 5); Registration of Securities on Form S–8, 1999 WL 95488.

As the Second Circuit has recognized in a case where the defense suggested section 5 required proof that the transactions were a part of an "integrated offering," the "relevant inquiry in such cases is not so much upon the nature of the offering as upon the need for protection of the class of offerees; i.e., whether they have the information which a registration would disclose, or have access to it." *SEC v. Universal Major Industries Corp.,* 546 F.2d 1044, 1047 (2d Cir.1976). Thus, although the com-

plaint does not allege the existence of a preconceived plan, Count Six adequately pleads a violation of section 5 because it alleges that the company received profits from its employees' sale of unregistered stock to the public.

### C. Claim 7 States a Control Person Claim against Defendant Grace Murphy

In passing, Defendants contend that Claim 7 should be dismissed solely because they correspond to the fraud alleged in Claims 1 and 2. As the complaint properly states a claim for violations of the anti-fraud provisions, this argument fails.

▄▄▄ Moreover, the SEC may seek disgorgement from "nominal" or "relief" defendants who are not themselves accused of wrongdoing in a securities enforcement action where those persons or entities (1) have received ill-gotten funds, and (2) do not have a legitimate claim to those funds. *See Cavanagh,* 155 F.3d at 136. The complaint alleges that Grace Murphy was unjustly enriched through the sale of DCI common stock, DCI's payment of her personal expenses, and the transfer to her of assets obtained as a result of defendant Murphy's allegedly unlawful conduct. Compl. ¶¶ 11, 113, 114. In addition, the complaint alleges that Grace Murphy did not provide value for such assets and has no just claim to them. *Id.* ¶ 139. Therefore, the complaint states a claim against Grace Murphy.

### Conclusion

For the foregoing reasons, the Defendants' motion is denied.

It is so ordered.