**GIANT GROUP, LTD., Plaintiff,**

v.

Glenn SANDS; Arthur Andersen LLP; L.H. Friend, Weinress, Frankson & Presson, Inc.; and Friedman Alpren & Green LLP, Defendants.

No. 00 CIV. 7578(RWS).

United States District Court, S.D. New York.

May 16, 2001.

---

Storch Amini & Munves, New York City, Steven G. Storch, Bijan Amini, of counsel, for Plaintiff.

Nesenoff & Miltenberg, New York City, Andrew T. Mittenberg, Janie Chen, of counsel, for Defendant Glenn Sands.

Rosenman & Colin, New York City, Alan I. Raylesberg, Steven M. Haber, Julie Pechersky, of counsel, for Defendant Arthur Andersen.

Grant, Genovese & Baratta, Irvine, CA, David C. Grant, of counsel, for Defendant L.H. Friend, Weinress, Frankson & Presson, Inc.

Parker Chapin, New York City, Stephen G. Rinehart, of counsel, for Defendant Friedman Alpren & Green.

## OPINION

SWEET, District Judge.

Defendants Arthur Anderson LLP ("Anderson"), Friedman Alpren & Green LLP ("Friedman") and Glenn Sands ("Sands") have each filed motions to dismiss this securities fraud action pursuant to Rules 9(b) and 12(b) of the Federal Rules of Civil Procedure. Plaintiff Giant Group, Ltd. ("Giant") opposes the motions. For the reasons set forth below, the motions will be granted.

### The Parties

Giant is a corporation organized under the laws of Delaware, with its principal place of business in Beverly Hills, California. As a result of the transaction at issue in this case, Giant is the sole owner of all of the outstanding shares of Periscope Sportswear, Inc. ("Periscope"), a Delaware corporation.

Sands is an individual residing in New Jersey. At all times relevant to this action, Sands was the principal shareholder and chief executive officer of Periscope, and continued in that capacity until he was dismissed in April 2000.

Anderson, an independent public accounting firm, is a limited liability partnership organized and with offices in cities including Los Angeles, California, and New York, New York. At all relevant times, Anderson was Giant's outside auditor. Anderson also served as Periscope's outside auditor.

Friedman, also an independent public accounting firm, is a limited liability partnership organized under the laws of New York, with its principal place of business in New York, New York. Friedman was Periscope's independent auditor from 1987 through 1996.

Defendant L.H. Friend ("Friend") is a corporation organized under the laws of California, with its principal place of business in Irvine, California. At all times relevant to this action, Friend was engaged in the business of investment banking and underwriting.

### Background

This action arose out of Giant's acquisition of Periscope on or about December 11, 1998. The complaint, filed on October 6, 2000, alleges that the defendants defrauded Giant, breached contractual obligations, and violated federal securities law by making false and misleading representations and failing to make necessary disclosures of material information regarding Sands' alleged participation in fraudulent schemes at Periscope. (Complaint ¶¶ 1–2, 4–6.) Specifically, the complaint alleges that if Giant had known of Sands' misconduct—alleged to include prebilling,[1] making ma-

---

1. Pre-billing is the practice of recording as revenue sales of product which had not been

terial misstatements of Periscope's assets and receivables, committing customs fraud, embezzling Periscope's funds, and making material misstatements and omissions in Periscope's prospectus and annual and quarterly financial statements for the years ending in 1996 and 1997, as well as the first three quarters of 1998 (Complaint ¶ 3)—he would not have invested $35 million in Periscope.

In lieu of answering the complaint, Anderson filed a motion to dismiss the complaint on January 9, 2001, on the following grounds: (1) the action is barred by the one-year statute of limitations applicable to Rule 10b–5 securities fraud claims; (2) Giant has failed to plead scienter as per the requirements of the Private Securities Litigation Preform Act of 1995 ("PSLRA"); (3) failure to plead fraud with particularity under both the PSLRA and Fed.R.Civ.P. 9(b); and (4) the state law claims should be dismissed for lack of supplemental jurisdiction if the sole federal securities claim is dismissed.

On the same date, Friedman filed a motion to dismiss for (1) failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6); (2) failure to plead fraud with particularity pursuant to Rule 9(b); and (3) dismissal of the pendent state law claims for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1).

Sands filed a motion to dismiss on January 10, 2001 for (1) failure to plead fraud with particularity; (2) failure to state a claim with regard to (a) misrepresentations; (b) omissions; and (c) aider and abettor liability; and (3) failure to plead a special relationship to establish a negligent representation claim.

delivered in order to inflate falsely a company's sales figures and corresponding profits. *See, e.g., S.E.C. v. Burns,* 816 F.2d 471, 473

Giant opposed the motions, which were deemed fully submitted on April 4, 2001.

## I.  *Applicable Legal Standards*

### A.  *Failure to State a Claim Pursuant to Rule 12(b)(6)*

In reviewing a motion to dismiss under Rule 12(b)(6), review must be limited to the complaint and documents attached or incorporated by reference thereto. *See Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991). .Courts must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993) (*citing IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052 (2d Cir. 1993)). Dismissal is warranted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). *See also Bass v. Jackson,* 790 F.2d 260, 262 (2d Cir.1986).

"For purposes of a motion to dismiss, [the Second Circuit has] deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference ..., as well as public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000) (*citing Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir. 1989); *Kramer,* 937 F.2d at 774; and *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991), *cert. de-*

(9th Cir.1987); *Shamis v. Ambassador Factors,* No. 95 CIV 9818(RWS), 2000 WL 1368049, *2 (S.D.N.Y. Sept.21, 2000).

*nied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992)). In addition, courts may take judicial notice of additional facts meeting the test set forth in Federal Rule of Evidence 201. *Kramer,* 937 F.2d at 774.

Although "limited quotation does not constitute incorporation by reference," *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989) (*quoting Goldman v. Belden,* 754 F.2d 1059, 1066 (2d Cir.1985)), the "line between incorporating by reference and not doing so ... is fine," *Kas v. Chase Manhattan Bank, N.A.,* No. 90 CIV. 44(KMW), 1990 WL 113185, *4 (S.D.N.Y. July 30, 1990) (*citing Ruff v. Genesis Holding Corp.,* 728 F.Supp. 225, 227 n. 2 (S.D.N.Y.1990) ("Because the PPM was referred to extensively throughout the Complaint, rather than merely quoted from sporadically, we regard it as having been incorporated by reference into the Complaint.") (distinguishing *Cosmas* )).

While a court may transform a 12(b)(6) motion into a summary judgment motion pursuant to Rule 56(c) if the parties submit evidence beyond the pleadings, such action is inappropriate unless the parties are given notice and an opportunity to respond appropriately. Fed.R.Civ.P. 12(b) ("If, on a [12(b)(6) motion], ..., matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment ... and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."); *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000). Even where additional materials are submitted by one party, a trial court should not transform a 12(b)(6) motion into a summary judgment motion where, as here, the motion has been filed in lieu of an answer, and the parties have neither completed discovery nor formally requested that the motion be converted.

*See 2 Broadway L.L.C. v. Credit Suisse First Boston Mortg. Capital L.L.C.,* No. 00 Civ. 5773 GEL, 2001 WL 410074, *5 & n. 3 (S.D.N.Y. Apr.23, 2001).

In any case, a court need not convert a 12(b)(6) motion into a summary judgment motion to consider additional materials "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint." *Cortec,* 949 F.2d at 47–8. *See also Envirosource, Inc. v. Horsehead Resource Dev. Co., Inc.,* No. 95 CIV. 5106(AGS) 1996 WL 363091 at * 5 (S.D.N.Y. July 1, 1996) ("In ruling on a Rule 12(b)(6) motion, the Court may properly take notice of documents outside the four corners of the complaint where, as here, the plaintiff has actual notice of the documents and has relied upon them in framing the complaint."). Pursuant to *Cortec,* at least two District Courts within this Circuit have considered materials submitted to judges in related actions, pursuant to a motion to dismiss, where the plaintiff not only had notice thereof, but in fact "relied upon these documents in framing the complaint." *Novo Nordisk of North America, Inc. v. Genentech, Inc.,* 885 F.Supp. 522, 526 (S.D.N.Y.1995) (Motley, J.); *see also Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.,* 129 F.Supp.2d 578, 591 (W.D.N.Y.2000) (considering various documents filed in related actions, including documents the parties filed with various agencies, correspondence between them and the agencies, and the agencies' decisions, because plaintiff was on notice of and relied upon them in bringing the action), *aff'd,* 229 F.3d 1135 (2d Cir.2000), *petition for cert. filed,* No. 00–1321, 69 U.S.L.W. 3593 (Feb. 15, 2001).

### B. *Rule 10b–5*

Count One of the complaint alleges that each of the defendants committed federal

securities fraud under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), (the "Exchange Act")[2], and Rule 10b–5 promulgated thereunder. Rule 10b–5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1990).

### 1. *Statute of Limitations*

Claims brought under Rule 10b–5 must be "brought within one year after the discovery of the facts constituting the violation and within three years after such violation." 15 U.S.C. § 78i(e); *see Rothman v. Gregor*, 220 F.3d 81, 96 (2d Cir.2000).

The one-year period begins to run either upon actual notice of the underlying claim, or upon "constructive or inquiry notice." *Rothman*, 220 F.3d at 96. "[W]here the circumstances would suggest to an inves-

tor of ordinary intelligence the probability that [it] has been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry." *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350 (2d Cir.1993). Thus, "the statute is not tolled for a plaintiff's leisurely discovery of the full details of the alleged scheme," *In re Integrated Resources Real Estate Ltd. Partnerships Sec.Litig.*, 815 F.Supp. 620, 637 (S.D.N.Y. 1993), but rather begins to run as soon as a "storm warning" arises. *Dodds*, 12 F.3d at 350 (quotation omitted).

The question of notice is objective, requiring the court entertaining a motion to dismiss to assess, from the pleadings and the public disclosures, when the facts from which knowledge may be imputed became clear. *See id.*, 12 F.3d at 352. Information that may constitute inquiry notice includes:

any financial, legal, or other data, including public disclosures in the media about the financial condition of the corporation and other lawsuits alleging fraud committed by the defendants, available to the plaintiff providing him with sufficient storm warnings to alert a reasonable person to the probability that there were either misleading statements or significant omissions involved in the sale of the securities.

*Dietrich v. Bauer*, 76 F.Supp.2d 312, 343 (S.D.N.Y.1999).

Where the pleadings demonstrate that the plaintiff was on inquiry notice more than one year before the complaint was

**2.** Section 10b–5 provides that

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange...

(b) To use or employ, in connection with the purchase or sale of any security regis-

tered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15   U.S.C. § 78j(b).

filed, a court may appropriately grant a motion dismiss. *See Dodds*, 12 F.3d at 352 n. 3 ("Where, as here, the facts needed for determination of when a reasonable investor of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers such as the prospectuses and disclosure forms that are integral to the complaint, resolution of the issue on a motion to dismiss is appropriate."); *Menowitz v. Brown*, 991 F.2d 36, 42 (2d Cir.1993) (affirming dismissal of federal securities claims as time-barred because plaintiffs were placed on inquiry notice more than a year before bringing suit); *Salinger v. Projectavision, Inc.*, 934 F.Supp. 1402, 1412 (S.D.N.Y.1997) (granting motion to dismiss because SEC filings and press releases put plaintiff on inquiry notice more than one year before complaint was filed). *Cf. Rothman*, 220 F.3d at 97 (noting that where complaint and facts incorporated into it do not establish inquiry notice, additional fact-finding is necessary and granting motion to dismiss is inappropriate).

### 2. *Pleading Requirements*

In order to state a claim under Rule 10b–5, a plaintiff must allege that in connection with the purchase or sale of securities, the defendant, acting with intent to defraud, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused plaintiff injury. *Press v. Chemical Inv. Servs. Corp.*, 166 F.3d 529 (2d Cir.1999) (*quoting In re Time Warner Inc. Secs. Litig.*, 9 F.3d 259, 264 (2d Cir.1993) (internal quotations omitted)).

In addition, the complaint should set forth facts demonstrating when the fraud was discovered in order to aver compliance with the statute of frauds, *see Ardui-ni/Messina Partnership v. National Med.* *Fin. Serv. Corp.*, 74 F.Supp.2d 352, 359 (S.D.N.Y.1998), although failure to do so will not necessarily subject a complaint to dismissal absent other deficiencies, *see, e.g., Komanoff v. Mabon, Nugent & Co.*, 884 F.Supp. 848, 856 (S.D.N.Y.1995) (citing cases).

### a. *Pleading Fraud with Particularity*

A 10b–5 claim must conform with the particularity obligations imposed by Federal Rule of Civil Procedure 9(b), which provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind may be averred generally."

Moreover, section 21D(b)(2) of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4(b)(2) (1995) (the "Reform Act"), requires a plaintiff to "state with particularity" facts that raise a "strong inference of fraudulent intent," as required by preexisting Second Circuit law. *See Novak v. Kasaks*, 216 F.3d 300, 310–11 (2d Cir.2000) (recognizing that the Reform Act raised pleading 10b–5 standard to previously existing Second Circuit standard). For example, a claim would meet the Reform Act standard if it alleged that "when the promise was made, the defendant secretly intended not to perform or knew that he could not perform." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir.1993). *See Gurary v. Winehouse*, 190 F.3d 37, 44 (2d Cir.1999) (affirming dismissal of Rule 10b–5 claim where complaint did not allege that defendant "did not intend to do just what he promised at the times he made the statements" at issue.).

### b. *Scienter*

In order to raise the inference of scienter sufficiently to withstand a motion to

dismiss, a plaintiff must allege either (a) facts to show that defendants had both motive and opportunity to commit fraud; or (b) facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *See In re Carter–Wallace Securities Litigation,* 220 F.3d 36, 39 (2d Cir.2000) (*"Carter–Wallace II "*); *In re Livent, Inc. Secs. Litig.,* 78 F.Supp.2d 194 (S.D.N.Y.1999) (*quoting Press v. Chemical Investment Svcs. Corp.,* 166 F.3d 529, 537–38 (2d Cir.1999)). Violations of generally accepted accounting practices ("GAAP"), when coupled with evidence of fraudulent intent, make out this element. *Novak v. Kasaks,* 216 F.3d 300, 309 (2d Cir.2000).

## II. *The Statute of Limitations Bars Giant's Federal Securities Claim*

■ The Rule 10b–5 claims are time-barred by the Rule 10b–5 statute of limitations if Giant was on actual or inquiry notice of the potential claims against the defendants before October 6, 1999, one year before the complaint was filed.

The complaint alleges that this

> action [w]as ... commenced within three (3) years of the purchase by plaintiff of Periscope's stock and within one year of when plaintiff discovered or could have with the reasonable exercise of diligence discovered defendants' fraud. Indeed, plaintiff did not discover the underlying fraud until at least December, 1999, when, in connection with a proposed sale of its interest in Periscope to another party, it was advised by the proposed purchaser, another apparel company, that its independent due diligence had uncovered Sands' Lazoff, U.S. Customs and pre-billing schemes.

(Compl.¶ 71.) Thus, taking the factual allegations in the complaint as true as is necessary in this motion to dismiss, Giant had actual notice of Sands' conduct in December of 1999, within one year of the date the complaint was filed.

The relevant question therefore becomes whether the circumstances existing prior to October 6, 1999, as set forth in the complaint, would have suggested to an investor of ordinary intelligence the probability that it had been defrauded, giving rise to a duty of inquiry from which knowledge may be imputed. *See Dodds,* 12 F.3d at 350. In addressing the existence of inquiry notice pursuant to the one-year statute of limitations, the complaint alleges only that the action was filed "within one year of when plaintiff discovered or could have with the reasonable exercise of diligence discovered defendants' fraud." (Compl.¶ 71.) However, it is well established that "conclusory arguments as to reasonable diligence, both in the context of inquiry notice and fraudulent concealment, must fail." *Pilarczyk v. Morrison Knudsen Corp.,* 965 F.Supp. 311, 319 & n. 7 (N.D.N.Y.1997); *see also Wynne v. Equilease Corp.,* No. 94 CIV. 4992(LMM), 1995 WL 764236, *5 (S.D.N.Y. Dec.27, 1995) ("Investors may not simply hide behind conclusory assertions that they were unable to discover the alleged fraud in the Offering Memorandum.")

One factor complicating this analysis is that Giant contends that its ability to make a reasonable inquiry was undermined by what amounts to a conflict of interest on the part of its auditors, Anderson and Friend, which had both previously been hired by Periscope to prepare and/or review Periscope's financial statements. (Compl.¶¶ 4, 6.) In *United States v. Arthur Young & Co.,* 465 U.S. 805, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984), the Supreme Court stressed the importance of auditor independence—and the "public perception" of auditor independence—to the SEC's mission:

The SEC requires the filing of audited financial statements in order to obviate the fear of loss from reliance on inaccurate information, thereby encouraging public investment in the Nation's industries. It is therefore not enough that financial statements be accurate; the public must also perceive them as being accurate. Public faith in the reliability of a corporation's financial statements depends upon the public perception of the outside auditor as an independent professional.... If investors were to view the auditor as an advocate for the corporate client, the value of the audit function itself might well be lost....

465 U.S. at 819 n. 15, 104 S.Ct. 1495. Regulations pertaining to auditing of publicly held companies seek to achieve this goal. *See* 17 C.F.R. § 210.2–01, Note 1 (noting that regulation "is designed to ensure that auditors are qualified and independent of their audit clients both in fact and appearance."); 17 C.F.R. § 210.2–01, ¶ 3(c)(4)(i)(A)(2) ("An auditor is not independent of its client if the accountant prepares financial statements filed with the Securities and Exchange Commission or documents that form the basis of such filings.").

Yet Giant sought out the assistance of Anderson and Friend with full knowledge of the fact that they had audited Periscope, and in fact sought to gain an advantage from this fact. It is somewhat disingenuous for Giant now to claim lack of notice of misconduct after hiring the defendant auditing companies to check their own financial work. *Cf.* 17 C.F.R. § 210.2–01, Prelim. note ¶ 2 ("the Commission looks in the first instance to whether a relationship or the provision of a service: creates a mutual or conflicting interest between the accountant and the audit client; [or] places the accountant in the position of auditing his or her own work").

However, Giant's questionable judgment is not dispositive, because public policy requires that auditors, not lay purchasers, bear the cost resulting from the non-enforcement of financial safeguards. Federal securities laws place a heavy burden on financial auditors to ensure their own independence. As the Supreme Court noted in *Arthur Young,*

> [b]y certifying the public reports that collectively depict a corporation's financial status, the independent auditor assumes a *public* responsibility transcending any employment relationship with the client. The independent public accountant performing this special function owes ultimate allegiance to the corporation's creditors and stockholders, as well as to investing public. This 'public watchdog' function demands that the accountant maintain total independence from the client at all times and requires complete fidelity to the public trust... Thus, the independent auditor's obligation to serve the public interest assures that the integrity of the securities markets will be preserved....

465 U.S. at 817–19, 104 S.Ct. 1495 (emphasis in original). Although the regulations for auditor independence apply to the preparation and public filing of SEC documents, the same rationale should remain in force when an auditor contemplates providing its services to a prospective purchaser of the audited company. *See* 17 C.F.R. § 210.3–05 (setting forth requirements for financial statements of businesses acquired or to be acquired); *see also Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 545 F.Supp. 1314, 1351 (S.D.N.Y.1982) ("An issue in this case even more critical than the conduct of the [defendant company] entities was the conduct of [the auditor] in providing accounting services to parties intimately involved in all phases of the case on both sides of

every relevant transaction."). This is not the first time Anderson has been alleged to have improperly served on both sides of a securities transaction. *See id.*

Otherwise, if the original audit were not truly independent, allowing the same auditor to act on behalf of a potential purchaser would merely ratify any financial misconduct rather than ensuring an objective outside analysis of the company's financial viability. The safeguards identified by the Supreme Court in *Arthur Young* and codified in the CFR to protect the public in connection with the purchase and sale of securities would be rendered meaningless, undermining the public trust on which the securities market depends. As the entities with the financial expertise to assess a company's financial status, auditors, not lay purchasers, should bear the cost resulting from a failure to ensure auditors' independence.

In any case, the facts set forth in the complaint and additional materials relied upon in framing it establish that Giant was on inquiry notice before October 6, 1999, notwithstanding any conflict on the part of the auditor defendants. Paragraph 47 of the complaint quotes findings of the Honorable John S. Martin in a related case as the basis for the factual contentions regarding Sands' misconduct. In that action, according to Giant's complaint, Judge Martin found that Sands engaged in:

> criminal violations of the internal revenue code, the securities law, the customs law, the law dealing with obstruction of government investigation, and in this courtroom perjury .... If Mr. Sands didn't know there was cause for his termination, it is because he has no conscience. He engaged in destruction of documents in response to a customs in-

vestigation. He engaged in prebilling. He engaged in other frauds.

(Compl.¶ 47) (*quoting Sands v. Giant Group Ltd.,* No. 00 Civ. 3472(JSM), Docket No. 29 (Preliminary Injunction Hearing Findings of Fact, July 6, 2000)).

Anderson has submitted some of that evidence presented to Judge Martin in support this motion—including a supplemental declaration of Periscope's Chief Financial Officer ("CFO") Ray Kuslansky ("Kuslansky") (Haber Aff. Ex. 5); a declaration of then Giant director and vice-chairman, David Gotterer ("Gotterer") (Haber Aff. Ex. 6); and the February 8, 1999 letter sent from Arthur Anderson engagement partner Richard Salute ("Salute") to Giant principals summarizing problems with Periscope's financial data (Haber Aff. Ex. 7). As a party to the action before Judge Martin, Giant was clearly on notice of, possessed, and in fact relied upon, the "substantial evidence to support [Judge Martin's] findings," (Compl.¶ 47) at the time it drafted the complaint in this action. Therefore, they are appropriately considered in this motion to dismiss. *See Rothman,* 220 F.3d at 88.

Each of the aforementioned documents demonstrates that Giant and its principals had been advised of Sands's financial misdeeds after acquiring Periscope, prior to October 6, 1999. After discovering evidence that Sands had been prebilling approximately $1.3 million, Periscope CFO Kuslansky advised Bill Pennington ("Pennington"), then Giant's CFO, of the misconduct sometime during the first half of 1999. (Haber Aff. Ex. 5 at ¶¶ 24–26.)[3] Gotterer, a director and CFO of Giant, declared that:

> [p]rior to February 8, 1999, I and others learned of various accounting abuses on the part of Sands, including the receipt

---

**3.** Gotterer avers that he did not discover the prebilling scheme until Arthur Anderson and Kuslansky both advised him of it in March of 2000. (Haber Aff. Ex. 6 at ¶¶ 23, 24.)

of improper compensation. Sands had Periscope pay numerous personal expenses, including, among others, alimony, personal mortgages, personal clothing, and personal transportation. I and others personally gave notice orally and in writing to Sands that this misconduct had to cease and that he had to repay the company.

(Haber Aff. Ex. 6 ¶ 8.)

Salute's February 8, 1999 letter to Giant principals stated bluntly that during Anderson's review of Periscope's financial statements for 1997 and 1998, "certain matters have come to our attention that require your immediate attention." (Haber Aff. Ex. 7 .) Specifically, the letter advises Giant that Sands charged personal expenses to Periscope on an American Express card, that Periscope was paying for the majority shareholders' use of five cars, and that these practices were "inconsistent with sound business principle of a Public Company." (*Id.*) Salute noted that subsequent to December 1998, when Giant purchased Periscope, he discovered during a visit to Periscope that Sands had previously been in the habit of this "unacceptable practice." (*Id.*) In sum, Salute noted that:

> [t]he behavior referred to above could, if unchecked and not corrected immediately, rise to the level of 'reportable events' which under generally acceptable auditing standards and rules and regulations promulgated by the [SEC] require that they be reported to Giant's full Board and if not cured referred to the [SEC]. **This could result in decrease[d] investor confidence, potential civil investigation by regulatory bodies and potential civil liability.**

(*Id.*) (Emphasis added.) Salute recommended that specific controls be implemented in order to "mitigate the risk of misstatement and fraud." (*Id.*) Gotterer's declaration sets forth various responses Giant principals took in response to the February, 8, 1999 warning from Arthur Anderson, including instituting the recommended fraud controls and sending sternly worded memoranda to Sands instructing him to cease his improper financial practices.

The evidence that Giant had been notified about Sands' improper charging of personal expenses to Periscope, coupled with Anderson's explicit warning that this practice was a "reportable event" potentially subjecting Giant to "civil liability," is sufficient storm warning to have put Giant on inquiry notice more than one year before the filing of this action. *See, e.g., Ebrahimi v. E.F. Hutton & Co.,* 852 F.2d 516, 523 (10th Cir.1988) (statements which alert investor that "something may have been amiss" are sufficient to put investor on inquiry notice); *Insurance Consultants of America, Inc., Employee Pension Plan v. Southeastern Ins. Group, Inc.,* 746 F.Supp. 390, 409 (D.N.J.1990) (shareholders' receipt of letter detailing, inter alia, directors' excessive charging of entertainment and personal expenses to acquiree company constituted inquiry notice); *cf. SEC v. DCI,* 122 F.Supp.2d 495, 501 (S.D.N.Y.2000) (holding that complaint alleging use of company funds to pay personal expenses stated claim for securities fraud); *S.E.C. v. Brooks,* No. Civ. A. 3:99–CV–1326–D, 1999 WL 493052, *2 (N.D.Tex. July 12, 1999) (noting that use of invested funds to pay personal expenses was probative of securities fraud).

Even if this information was insufficient to raise a storm warning for Giant before it purchased Periscope on December 11, 1998, it certainly received constructive notice thereafter. *See Rothman,* 220 F.3d at 97 (*citing Menowitz,* 991 F.2d at 41–42) (holding that either constructive notice or inquiry notice is sufficient to trigger statute of limitations on securities fraud

claims). For a ten month period before October 11, 1999, Giant had access to Periscope's books, records, handwritten invoices, and other financial indicators of Sands' prebilling and fraud. As of December 11, 1998, Giant was no longer beholden to the defendants for access to financial information about Periscope, but rather assumed primary access to and responsibility for overseeing this information. In fact, during the first half of 1998, after seeing handwritten invoices and prebilled goods that had not been shipped in Periscope's New Jersey warehouse, Kuslansky notified Giant's CFO, Bill Pennington, of the prebilling. (Haber Aff. Ex. 5 ¶ 26.) Such information is clearly material to a federal securities claim. *See Caravan Mobile Home Sales, Inc. v. Lehman Bros. Kuhn Loeb, Inc.,* 769 F.2d 561, 566 (9th Cir.1985) (finding in insider trading context that information about illegal pre-billing "would have been material if defendants had been aware of this practice.") Once it assumed full ownership of Periscope, Giant could not blame the defendants for its own failure to recognize the material evidence of prebilling and misrepresentation of Periscope's assets and receivables.

Finally, the fact that Giant purports to have discovered the misconduct only after a potential acquirer's due diligence revealed it fully one year after Giant purchased Periscope, demonstrates that Giant failed to exercise reasonable diligence to investigate the possibility of fraud in connection with its purchase of Periscope. *See Dodds,* 12 F.3d at 350.

In sum, Giant had notice of the probability of that there were misleading statements and material omissions in the financial data provided in connection with its purchase of Periscope more than one year before this action was filed. As such, the federal securities fraud claims are barred by the statute of limitations. *See* 15 U.S.C. § 78i(e); *Rothman,* 220 F.3d at 96.

Therefore, Count 1 will be dismissed,[4] and the other grounds raised by the defendants in support of their motions to dismiss the federal securities claims therefore need not be addressed.

### III. The Remaining State Law Claims Will Be Dismissed for Lack of Jurisdiction

Since the federal securities claim raised in the complaint has been dismissed, there is no federal question basis for exercising jurisdiction. As the Supreme Court noted in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), whether to retain jurisdiction over pendent state law claims is within a trial court's discretion, "not [a matter of] plaintiff's right." 383 U.S. at 726, 86 S.Ct. 1130. However, the Court also directed that:

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

---

4. Count 1 will be dismissed against all parties, including defendant L.H. Friend, although Friend did not bring a motion. The Court has discretion to dismiss a claim against a party *sua sponte* where, as here, the plaintiff has had the opportunity to be heard. *See Wachtler v. County of Herkimer,* 35 F.3d

77, 82 (2d Cir.1994). The result would not be different if Friend had filed a motion and Giant had responded, because the statute of limitations analysis is identical for the securities claims alleged against each of the defendants.

*Id.* (citations and footnotes omitted). Accordingly, the remaining state law claims will be dismissed. *See Grace v. Rosenstock,* 228 F.3d 40, 55 (2d Cir.2000) (discussing policy reasons for dismissing pendent state law claims after federal claim has been dismissed).

### Conclusion

For the foregoing reasons, Count 1 is dismissed pursuant to Rule 12(b)(6), and the pendent state law claims are dismissed in the exercise of the Court's discretion.

It is so ordered.